# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUSTIN HIGMAN, | ) |
| | ) Civil Action No. 2:18-cv-00662 |
| Plaintiff, | ) |
| | ) |
| vs. | ) Magistrate Judge Lisa Pupo Lenihan |
| | ) |
| STATE FARM MUTUAL AUTOMOBILE | ) |
| INSURANCE COMPANIES, | ) ECF No. 3 |
| | ) |
| Defendant. | ) |

## **OPINION**

Presently before the Court is Defendant's Motion to Dismiss and to Strike (ECF No. 3). For the reasons set forth below, the Court will grant in part and deny in part the Motion to Dismiss, and will deny as moot the Motion to Strike.

**I.     Relevant Facts**

This case involves a motor vehicle accident ("MVA") that occurred on June 2, 2017. Plaintiff, Justin Higman ("Higman") was driving a car insured under a policy issued by the Defendant, State Farm Mutual Automobile Insurance Company ("State Farm"). Within the policy, Plaintiff purchased uninsured/underinsured coverage in the amount of $50,000 per person and $100,000 per accident for two vehicles, with stacking. Compl., ¶¶ 4, 5 (ECF No. 1-1). On June 2, 2017, Plaintiff's car was struck by another vehicle which was backing out of a driveway. *Id.* at ¶ 7.  Higman sustained a left shoulder injury which resulted in him leaving work early to visit the hospital for x-rays concerning a left shoulder separation. *Id.* at ¶ 10.

For the following six months, Plaintiff was treated by orthopedic doctors, as recommended by his Primary Care Physician, and physical therapists for his left shoulder injury. On October 27, 2017, Plaintiff underwent surgery for left shoulder injuries including the

separation of the left acromioclavicular joint. Plaintiff remained disabled from his employment from the date of the accident until January 2018, which resulted in lost income in excess of $74,000. *Id.* at ¶ 15. Having obtained Plaintiff's medical and income records, State Farm paid Plaintiff: (1) the full $5,000 in no-fault medical pay coverage for Plaintiff's accident related treatment, and (2) the maximum of $5,000 in no-fault income loss coverage. State Farm paid these expenses without challenge. *Id.* at ¶¶ 16-18. Nationwide, the insurance carrier for the other driver, paid Plaintiff the bodily injury policy limit of $15,000. *Id.* at ¶ 18.

On November 28, 2017, Plaintiff submitted a demand package to Defendant which documented the $74,000 of lost income. *Id.* at ¶ 19. Plaintiff alleges that State Farm was already aware of the extent of his injuries and wage loss even prior to his counsel's November 28, 2017 letter. *Id.* at ¶ 20. Around February 2018, Defendant advised Plaintiff's counsel that it would need to further investigate Plaintiff's UIM benefits claim to determine whether "repetitive stress" caused Plaintiff's left shoulder injury and the need for the left shoulder surgery and disability from work. *Id.* at ¶ 22. Plaintiff alleges that (1) he was in excellent health prior to the MVA of June 2, 2017, (2) he was on his way to work when the accident happened, (3) he had no left shoulder injury or treatment prior to the MVA, (4) his medical records discussed his left shoulder injury as related to the MVA, and (5) State Farm paid for all of his medical treatment and wage loss as being due to the MVA. *Id.* at ¶ 23. Defendant has made no offer of settlement of Plaintiff's UIM claim, prompting Plaintiff to file this civil action on April 19, 2018.[1] *Id.* at ¶ 24.

---

[1] Plaintiff initiated this action against State Farm in the Court of Common Pleas on April 19, 2018 and State Farm subsequently removed the action to federal court on May 18, 2018. Notice of Removal, ¶ 1 (ECF No. 1).

2

## II. Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Kost v. Kozakiewics*, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (citing *Twombly*, 550 U.S. at 556-557). The court of appeals has expanded on this standard in light of its decision in *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008) (construing *Twombly* in a civil rights context), and the Supreme Court's recent decision in *Iqbal*:

> After *Iqbal*, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1948. The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must show that the allegations of his or her complaint are plausible. *See Id.* at 1949-1950; *see also Twombly*, 505 U.S. at 555, & n.3.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). In light of *Iqbal*, the *Fowler* court then set forth a two-prong test to be applied by the district courts in deciding motions to dismiss for failure to state a claim. First, the district court must accept all well-pleaded facts as true and discard any legal conclusions contained in the complaint. *Id.* at 210-211. Next, the court must consider whether the facts alleged in the Complaint sufficiently demonstrate that the plaintiff has a "plausible claim for relief." *Id.* at 211. To survive a motion to dismiss, a complaint must show an entitlement to relief through its facts. *Id.* (citing *Phillips*, 515 F.3d at 234-235).

However, nothing in *Twombly* or *Iqbal* has changed the other pleading standards for a motion to dismiss pursuant to Rule 12(b)(6). The Supreme Court did not impose a new, heightened pleading requirement, but reaffirmed that Federal Rule of Civil Procedure 8 requires only a short, plain statement of the claim showing that a pleader is entitled to relief, not "detailed factual allegations." *See Phillips*, 515 F.3d at 231.

Courts generally consider only the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. Corp. v. White Consol Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). Factual allegations within documents described or identified in the complaint may also be considered if the plaintiff's claims are based upon those documents. *Id.* A district court may consider these documents without converting a motion to dismiss into a motion for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d. Cir. 1997).

## III. Analysis

### A. Insurance Bad Faith Claim

In support of its Motion to Dismiss, Defendant argues Plaintiff failed to plead sufficient facts to support a bad faith claim, in Count III of the Complaint, under federal pleading

4

standards. Def.'s Br. in Supp. Mot. to Dismiss ("Def.'s Br.") at 4, (ECF No. 3). Plaintiff submits he has pled sufficient facts to entitle him to relief on this count.

An insurance bad faith action is governed by 42 PA. CONS. STAT. § 8371, which provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all the following actions:
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

42 PA. CONS. STAT. § 8371. The statute does not define "bad faith" or "set forth the manner in which an insured must prove liability." *Rancosky v. Washington Nat. Ins. Co.*, 170 A.3d 364, 37 (Pa. 2017). "To prove bad faith, a plaintiff must show by clear and convincing evidence that the insurer (1) did not have a reasonable basis for denying benefits under the policy and (2) knew or recklessly disregarded its lack of a reasonable basis in denying the claim." *Condio v. Erie Ins. Exch.*, 899 A.2d 1136, 1143 (Pa. Super. Ct. 2006) (citing *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994); *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233 (3d Cir. 1997)). The Pennsylvania Superior Court has defined bad faith in the insurance context as meaning:

> '[a]ny frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (for example, good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.'

*Terletsky*, 649 A.3d at 688 (quoting Black's Law Dictionary 139 (6th ed. 1990)). "Bad faith claims are fact specific and depend on the conduct of the insurer vis à vis the insured." *Condio*,

899 A.2d at 1143 (citing *Williams v. Nationwide Mut. Ins. Co.*, 750 A.2d 881, 887 (Pa. Super. Ct. 2000).

First, Defendant argues Count III should be dismissed because the Complaint does not plead sufficient facts to support a plausible bad faith claim. Specifically, State Farm contends the Plaintiff's allegation in support of bad faith -- that State Farm failed to make a settlement offer in order to conduct more investigation -- is not sufficient to support a bad faith claim under Pennsylvania law. State Farm refers to the policy, which states that before Plaintiff is entitled to recover UIM benefits, State Farm and Plaintiff must agree the insured is legally entitled to recover damages from the tortfeasor and, if so, the value of the damages.[2] Defendant relies on *Kosierowski v. Allstate Ins. Co.*, 51 F. Supp. 2d 585, 588 (E.D. Pa. 1999), *aff'd*, 234 F.3d 1265 (3d Cir. 2000), for the proposition that an insurer "is not required actively to submerge its own interest" when handling a UIM claim, and on *Condio*, 899 A.2d at 1144, which found that Pennsylvania law entitles each side to advocate for its interests and provides that an insurer is not obligated to pay an insured's claim "on demand, no questions asked."

In response, Plaintiff argues his bad faith claim should not be dismissed because the facts as pled demonstrate that State Farm does not have a reasonable basis to withhold UIM benefits and State Farm knows this. Plaintiff contends this claim is ripe now and the suit is about State Farm dragging out the payment of benefits that it owes. Pl.'s Br. in Opp'n Mot. to Dismiss ("Pl.'s Br."), at 8 (ECF No. 7). Plaintiff relies on *Condio*, for the proposition that in the UM/UIM context, Pennsylvania courts have recognized that while an insurer is not required to "sacrifice its own interests by blindly paying each and every claim submitted by the insured," the insurer "cannot withhold payment of the UIM claim absent a reasonable basis for doing so." 899 A.2d at

---

[2] The cited policy is not attached to either Plaintiff's Complaint or Defendant's brief.

1145. Plaintiff further argues that although an insurer is entitled to consider its own interests, the insurer is still bound by its duty of good faith and fair dealing, citing *Condio*, *id*. In addition, Plaintiff also cites *Brown v. Progressive Ins. Co.*, 860 A.3d 493, 501 (Pa. Super. Ct. 2004) (citing *Hollock v. Erie Ins. Exch.*, 842 A.2d 409 (Pa. Super. Ct. 2004) (finding that "arbitrarily refus[ing] to accept evidence of causation" was a factor supporting a finding of bad faith); *Wood v. Allstate Ins. Co.*, No. 96-4574, 1997 U.S. Dist. LEXIS 14663, at *9 (E.D. Pa. Sep. 19, 1997) (finding a refusal to pay UIM benefits while simultaneously paying out first party benefits for injuries sustained in the same accident could give rise to an inference that an insurer acted in bad faith); *Hollock v. Erie Ins. Exchange.*, No. 6790-C, 2002 WL 1265695, at *509 (Pa. Ct. Com. Pl. Jan. 7, 2002), *aff'd*, 842 A.2d 409 (Pa. Super. Ct. 2004) (finding the insurer acted unreasonably in handling plaintiff's UIM claim by challenging causation in plaintiff's UIM claim although it had not challenged causation in plaintiff's first party claim for medical benefits, required the insured to make submissions of medical information which was already in the possession of the insurer, and "blindly" relying on its own opinion of its experts despite credible evidence to the contrary).

Pennsylvania courts have recognized an insurer's right to investigate and evaluate UIM claims. According to the court in *Kosmalski v. Progressive Preferred Insurance*, failure of an insurer to 'immediately accede to a demand for the policy limit cannot, without more, amount to bad faith.'" No. 17-5726, 2018 WL 2045827 (E.D. Pa. May 2, 2018) (quoting *Smith v. State Farm Mut. Auto. Ins. Co.*, 506 F. App'x 133, 136 (3d Cir. 2012)). *See also Gowton v. State Farm Fire and Casualty Co.*, No. 15-1164, 2017 WL 818847 (W.D. Pa. Mar. 2, 2017). Additionally, the *Hollock* Court found that delay is relevant in determining whether bad faith has occurred but, even a long period of time between the demand and settlement does not, on its own, constitute

bad faith. *Hollock*, 2002 WL 1265695, at *507. Under Pennsylvania law, a bad faith insurance practice can include an *unreasonable delay* in payment. *Ania v. Allstate Ins. Co.*, 161 F. Supp. 2d 424, 430 (E.D. Pa. 2001) (emphasis added). *See also Wood,* 1997 U.S. Dist. Lexis 14663, at *9 (finding that the jury could find the insurer acted in bad faith in refusing to pay underinsured benefits until nearly two years after the Plaintiff's accident, and one and a half years after receiving the underinsured claim); *Kraeger v. Nationwide*, No. 95-7550, 1996 U.S. Dist. Lexis 18373 (E.D. Pa. Dec. 6, 1996) (determining a jury could find bad faith existed where an insurer did not take any action for ten months after receiving notice of an underinsured claim).

Here, Plaintiff submitted a demand with supporting documentation for his UIM claim to State Farm on November 28, 2017. In February 2018, State Farm contacted the Plaintiff and informed him of its intent to further investigate the claim. On April 19, 2018, Plaintiff commenced this action by filing a Complaint in the Court of Common Pleas of Allegheny County, PA. Only two months had elapsed between the time of State Farm's response in February and the commencement of this action. According to relevant Pennsylvania case law, it is not bad faith if an insurer does not immediately attend to a demand for a policy limit.

The only cases Plaintiff has cited to support his claim are distinguishable. First, the Plaintiff has not alleged facts which suggest that State Farm's delay in payment was unreasonable. For example, in *Wood*, the insurance company received the claim in December 1994 and failed to make an offer until around June 1996. 1997 U.S. Dist. LEXIS 14663, at *7. This delay occurred because the first specialist assigned to the claim insisted he needed additional medical records to make an offer, but when the claim was transferred, the new specialist was able to make an offer with the records within the file. *Id.* at *7-*8. The Court found the insurance company acted in bad faith because of the nearly two-year gap between the

claim submission and the payment. *Id.* at *9. Here, only five months have elapsed between the time Plaintiff submitted his claim and the commencement of this action. Next, Plaintiff cites *Hollock*, where the insurance company paid first-party benefits and subsequently denied the insured's UIM claim. The court found the insurance company was acting in bad faith because it took inconsistent positions when handling the UIM claim, in comparison to its position on the first-party benefits. This case is distinguishable because, contrary to the insurance company in *Hollock*, State Farm has not denied Plaintiff's UIM claim; rather, it requested to further investigate before making an offer. In addition, the *Hollock* case was in the summary judgment stage, rather than the motion to dismiss stage.

In conclusion, State Farm (1) has not had a substantial amount of time to investigate the claim, unlike the insurer in the cases Plaintiff relies on; and (2) has not denied the claim, but has indicated it needs to further investigate. Therefore, Plaintiff's reliance on these cases is misplaced.

Second, State Farm argues the Complaint contains no other facts regarding the handling of the UIM claim from which this Court could determine whether Plaintiff has a plausible bad faith cause of action, but rather, is premised on the repetitive legal conclusions, with no supporting information. These legal conclusions state that State Farm:

   a. Refused to engage in good faith settlement discussions with Plaintiff;
   b. Refused to offer an amount in settlement of Plaintiff's UIM claim that was commensurate with the gravity of his injuries and damages;
   c. Failed to engage in reasonable and proper settlement practices or protect the interests of its insured;
   d. Making an unreasonably low/no settlement offer;
   e. Failing to act in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim in which the company's liability was clear;
   f. Violated the Unfair Insurance Practices Act, 40 P.S. § 1171.5(10);
   g. Failing and refusing to properly evaluate Plaintiff's claim for settlement purposes;

    h. Failing to act in good faith and fair dealing in the handling of Plaintiff's claim for UIM benefits; and

    i. Refusing to pay Plaintiff the amount he was legally entitled to recover from a driver of an underinsured vehicle.

Compl. at ¶ 38. State Farm contends these allegations are exactly the type of "formulaic recitation of the elements of a cause of action" which the United States Supreme Court has determined are insufficient to state a claim under federal pleading standards. Def.'s Br., at 6 (ECF No. 4). In support of its argument, State Farm relies on numerous cases including: *Mondron v. State Farm Mutual Auto. Ins. Co.*, No. 16-412, 2016 WL 7384183, *3-4 (W.D. Pa. Dec. 21, 2016) (finding Plaintiff's use of generic invocation of statutory language does not satisfy his federal pleading burden. Rather, the plaintiff must describe who, what, where, when, and how the alleged bad faith conduct occurred within the complaint); *Plummer v. State Farm Fire & Casualty Co.*, 2:13-cv-01579, 2014 WL 2960473 (W.D. Pa. June 27, 2014) (dismissing Plaintiff's bad faith claim which was based on bald, conclusory allegations such as "by refusing to pay home owners' benefits in a timely fashion" and "by refusing to pay home owners' benefits pursuant to the policy of insurance"); and *Merrill v. State Farm Fire and Casualty Co.*, No. 12-1328, 2013 WL 588515 (W.D. Pa. Feb. 13, 2013) (finding general allegations that the insurer engaged in unreasonable bad faith practice by failing to investigate the claim, engaging in unreasonable claims handling practices, and unreasonably refusing to pay the claim were insufficient to maintain a claim for bad faith under federal pleading standards).

    In response, Plaintiff argues this situation is distinguishable from the cases Defendant has cited because the facts as pled establish that (1) he cut short his work day to seek emergency room care for his left shoulder on the day of the MVA; (2) he obtained treatment consistently for six months with orthopedic doctors and physical therapy for his left shoulder, (3) he had surgery on his left shoulder; (4) his surgeon directly related the left shoulder injury to the MVA, (5) he

incurred over $74,000 in lost income while he was disabled from the left shoulder injury. Pl.'s Br. at 7-8 (ECF No. 7). Plaintiff contends State Farm knew all of this prior to Plaintiff's counsel's letter dated 11/28/17. Based on these allegations, Plaintiff submits that this case does not involve a good faith dispute about the value of the UIM claim, but rather, is about State Farm dragging out payment of benefits it clearly owes to force Plaintiff to accept less than full payment due to his financial situation.

The district courts in this circuit have repeatedly held formulaic recitals of the elements of a bad faith claim without any factual support are insufficient to state a plausible bad faith claim. *See Timothy v. State Farm Fire and Cas. Co.*, 2:12-cv-732, 2012 WL 3648454 (W.D. Pa. Aug. 23, 2012) (finding that exclusively using conclusory allegations and boilerplate language alone to support a bad faith claim are not sufficient to withstand a motion to dismiss); *Liberty Ins. Corp. v. PGT Trucking, Inc.*, No. 2:11-cv-151, 2011 WL 2552531, at *4 (W.D. Pa. June 27, 2011) (finding the bad faith claims were insufficient when Plaintiff alleged a laundry list of generalized accusations, including allegations that insurer failed to adequately defend, investigate, and protect claimant's interests).

Additionally, the Third Circuit has reached a similar conclusion when dealing with these types of bad faith allegations. *See James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (finding the court should disregard "threadbare recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements" in a Rule 12(b) motion); *Santiago v. Warminster Twp.*, 629 F.3d 121, 131 (3d Cir. 2010) (finding the court should identify allegations that "because they are no more than conclusions [and] are not entitled to the assumption of the truth").

The Court finds no merit to Plaintiff's argument that the allegations pled in the Complaint support the conclusory allegations in paragraph 38. The Complaint reveals that initially, Plaintiff was treated conservatively for his shoulder injury. The Complaint further reveals that after physical therapy proved unsuccessful, Plaintiff obtained a second opinion from Dr. Radkowski, who diagnosed Plaintiff with a separation of the left acromioclavicular joint, among other injuries.[3] Almost five months after the MVA, Plaintiff underwent surgery for his injuries to his left shoulder. Thus, Plaintiff's prognosis for recovery and the true extent of his injuries and damages could not be known until sometime after Plaintiff's surgery on 10/27/17.[4]

Although Plaintiff alleges that he submitted his claim package to State Farm on 11/28/17 with supporting documentation, and that State Farm was aware of the extent of the Plaintiff's injuries and wage loss prior to 11/28/17 because State Farm had collected his medical and income records in order to pay the no-fault medical and wage-loss benefits, State Farm could not have known of the full extent of Plaintiff's injuries until sometime after Plaintiff's surgery on 10/27/17.[5] Although the Court is required to accept all factual allegations as true and draw all reasonable inferences in Plaintiff's favor, the Court is not required to accept allegations that are belied by logic.

Here, the Complaint fails to allege when State Farm knew the full extent of Plaintiff's injuries or what medical records State Farm possessed prior to 11/28/17. Moreover, Plaintiff

---

[3] The diagnosis and injuries are more accurately described in Dr. Radkowski's 5/15/18 narrative report, attached as Ex. 2 to Plaintiff's Brief in Opposition (ECF No. 7-2). Plaintiff has also attached a copy of the results of the MRI performed on 6/10/17 on his left shoulder to his opposition brief (Ex. 1 to Pl.'s Br., ECF No 7-1). However, the Court may not rely on non-public documents outside the Complaint in ruling on a motion to dismiss.

[4] Dr. Radkowski's narrative report (ECF No. 7-2) provides a timeline but it cannot be considered in ruling on this motion to dismiss.

[5] See Note 2, *supra*.

12

does not allege when he received payment of the no-fault benefits from State Farm, from which the Court may reasonably infer what medical and wage loss records State Farm has access to when it paid the no-fault benefits.[6] Because the full extent of Plaintiff's injuries and his prognosis for recovery could not be determined until after his surgery, it is not clear what State Farm knew about the extent of Plaintiff's injuries at the time it paid him no-fault benefits, compared to what Plaintiff's counsel provided to State Farm in his 11/28/17 letter. Thus, the allegations in paragraphs 6 through 37 do not support the conclusory statements contained in subparagraphs (g) through (i) of paragraph 38.

In addition, Plaintiff filed suit before State Farm had fully investigated the UIM claim or issued a denial of the claim, thereby precluding any settlement discussions or offers. As such, there are simply no factual allegations in the Complaint to support the conclusory statements in subparagraphs (a) through (e) of paragraph 38.

Finally, subparagraph (f) of paragraph 38 states that State Farm violated the Unfair Insurance Practices Act. This is not a factual allegation of bad faith conduct, but rather, an unsupported conclusion of law as to a claim not pled, and is completely lacking any factual support.

For the reasons set forth above, the Court finds that the Plaintiff has failed to allege facts to state a plausible bad faith claim. Therefore, the Court will grant the Defendant's Motion to Dismiss Count III bad faith claim without prejudice, and allow the Plaintiff leave to amend his complaint to allege sufficient facts to state a plausible bad faith claim.

---

[6] Plaintiff's exhibits attached to his opposition brief shed some light on this, but cannot be considered in ruling on a motion to dismiss.

### B. Count I and Count II Are Not Duplicative

In support of its Motion to Dismiss, Defendant argues Plaintiff's claims in Count I, for UIM benefits, and Count II, for breach of contract, are duplicative because both assert the same thing: UIM benefits available under a policy of automobile insurance issued by State Farm. Def.'s Br. at 10 (ECF No. 4). State Farm contends Plaintiff, in his breach of contract claim, is asserting that it failed to provide him UIM benefits he claims he is owed under the terms of the policy. Def.'s Br. at 10-11 (ECF No. 4). In support, Defendant relies on *Giannone v. Ayne Inst.*, 290 F. Supp. 2d 553, 566 (E.D. Pa. 2003) (stating Courts have recognized that duplicative counts are properly dismissed under Rule 12(b)(6)). However, *Giannone* is distinguishable because it does not involve the same types of claims as in the present situation. In *Giannone*, the court found claims for general negligence and negligent supervision or child abuse to be duplicative. 290 F. Supp.2d at 556. Here, there is a claim for UIM benefits and a claim for breach of contract.

Plaintiff argues Counts I and II are not duplicative because (1) Count I claims the UIM benefits (up to $100,000) that Plaintiff is entitled to pursuant to his auto insurance policy with State Farm, which does not require him to prove State Farm breached the policy terms; and (2) Count II states a claim for breach of the common law duty of good faith and fair dealing implied in every insurance contract. Pl.'s Br. at 9 (ECF No. 7). In support of his argument, Plaintiff relies on several district court cases, but none of them involve the types of claims Defendant argues are duplicative here.

The Court finds that Counts I and II are not duplicative. The UIM claim does not require Plaintiff to prove there was a breach of the implied duty of good faith and fair dealing. Rather, Plaintiff asks the Court to find that he is entitled to the UIM benefits under his insurance policy with State Farm. According to Pennsylvania law, underinsured motorist insurance is designed to

protect an insured from a negligent driver of another vehicle who causes injury to the insured, but with no fault of the insured, lacks adequate insurance coverage to compensate the insured for his or her injuries. *Harleysville Mut. Ins. Co. v. Established Traffic Control, Inc.*, 2012 LEXIS 447 1, *19-*20 (Pa. Ct. Com. Pl. Jul 10, 2012). Here, Plaintiff purchased UM/UIM coverage in the amount of $50,000 per person/$100,000 per accident for two vehicles with stacking. Compl. ¶ 5. To succeed on his UIM claim, Plaintiff is required to prove he is entitled to the UIM benefits and the amount of his damages.

Plaintiff's breach of contract claim alleges that State Farm breached its duty of good faith and fair dealing implied within the insurance contract between the parties. According to the court in *Berg v. Nationwide Mut. Ins. Co.*, "the utmost fair dealing should characterize the transactions between the insurance company and the insured." 44 A.3d 1164, 1170 (Pa Super. Ct. 2012) (citing *Dercoli v. Pennsylvania Nat'l Mut. Ins. Co*., 520 Pa. 471, 477 (1989)). The court further stated that an insurance company has a duty to deal with its insured "on a fair and frank basis, and at all times, to act in good faith. *Id. See also Hollock*, 842 A.2d at 416 (finding an insurer has a duty to act with the utmost good faith towards its insured). To determine whether an insurer acted in good faith, it is necessary to look at the manner in which the insurance company discharged its duty of good faith and fair dealing during the pendency of an insurance claim, not whether the claim is eventually paid. *Berg*, 44 A.3d at 1178 (citing *Toy v. Metro. Life Ins. Co.*, 928 A.3d 186, 199 (Pa. 2007). Thus, in order for Plaintiff to succeed on his claim for breach of the covenant of good faith and fair dealing, he must prove by clear and convincing evidence: (1) the existence of a contract and the content of its essential terms; (2) that [State Farm] breached the implied covenant of good faith and fair dealing; and (3) resultant damages. *Charter Oak Ins. Co. v. Maglio Fresh Food*, 45 F. Supp. 3d 461, 467 (E.D. Pa. 2014), *aff'd on other grounds*, 629

F. App'x 239 (3d Cir. 2015). These elements are clearly distinct and not duplicative of the elements Plaintiff must prove to succeed on his claim for UIM benefits in Count I.

For the reasons set forth above, the Court finds the UIM claim and the breach of contract claim are not duplicative. Defendant's Motion to Dismiss Count I, UIM benefits claim, and subsume it into Count II, breach of contract claim, is denied.

### C. Allegations of a Fiduciary Duty in Count II

State Farm also asks the Court to dismiss from the Complaint the allegations in paragraph 33 of Count II, that State Farm owed and/or breached a fiduciary duty to the Plaintiff in relation to his UIM claim, because the law clearly holds that no such duty exists with regard to a UIM claim. Plaintiff consents to the dismissal of the fiduciary duty language in paragraph 33 of Count II.

Accordingly, the Court will dismiss the allegations that State Farm owed and/or breached a fiduciary duty, to Plaintiff, including the references in paragraph 33 of Count II.

### D. Claim for Compensatory Damages for Bad Faith in Count II

Finally, State Farm asks the Court to strike Plaintiff's claim for compensatory damages for bad faith in Count III because compensatory damages are not recoverable under the bad faith statute. State Farm further argues that in the context of a statutory bad faith claim, Plaintiff can only recover the types of damages prescribed by the bad faith statute, which does not include compensatory damages. In response, Plaintiff concedes that compensatory damages are not available under the statute and consents to the Court striking that request.

The Court finds that the motion to strike compensatory damages is mooted by the Court's ruling on the motion to dismiss the statutory bad faith claim, *supra*. Nonetheless, because the Court is granting Plaintiff leave to amend his Complaint on that claim, the Court expects that the

amended statutory bad faith claim will not include a request for compensatory damage. Thus, the Court will deny as moot Defendant's motion to strike Plaintiff's claim for compensatory damages in Count III.

## IV. CONCLUSION

For the reasons set forth above, the Court will grant in part and deny in part the Motion to Dismiss, and will deny as moot the Motion to Strike.

A separate order will follow.


Dated: 10-22-18	BY THE COURT:

_____
LISA PUPO LENIHAN
United States Magistrate Judge


cc: All Counsel of Record